UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:19cr43 (JCH) |
| | : | |
| v. | : | |
| | : | |
| STEVEN GOLD | : | September 16, 2020 |

## GOVERNMENT'S SENTENCING MEMORANDUM

### Introduction

In this case, the defendant exploited his position as a financial insider and victimized his company in two ways. First, he was an essential part of a sales fraud scheme that resulted in a 3M loss to the company. Second, operating entirely on his own in actions that predated the sales conspiracy by years, he systematically siphoned over 6M from the company and successfully hid his tracks by virtue of his position. He spent the millions taken from the company on a life of largess filed with multiple homes, vacations, diving trips in exotic locations, and generous donations. Just the mortgage payments alone for his multiple residences exceeded his gross salary at the time. He should be sentenced to a term of incarceration within the applicable Guideline range.

### Relevant Procedural History

On February 21, 2020 the defendant pleaded guilty to one count of conspiracy to commit wire fraud and one count of wire fraud. In the plea agreement, the

1

parties agreed that the defendant's base offense level under U.S.S.G. § 2B1.1 is seven and two levels should added under § 3B1.1 because the defendant abused a position of trust and used a special skill in the commission of his offenses.

The parties also agreed that the loss was between 3.5M and 9.5M and, under § 2B1.1, eighteen levels should be added, making the total offense level 27. After subtracting three levels for acceptance of responsibility, the final offense level is 24. With a CHC of I, the defendant is exposed to term of incarceration of 51-63 months and a fine $20,000 to $200,000. The PSR applied the Guidelines in the same manner as the parties contemplated in the plea agreement.

After reviewing both the Presentence Report and the defendant's brief, the government believes that there are no disputed issues of material fact or law in this case. The Court must determine what is a fair and just sentence under 18 U.S.C. § 3553(a). For the reasons stated below, the government believes a sentence of incarceration within the applicable Guideline range is warranted.

Sentencing is scheduled for September 21, 2020 at 2:30 pm.

### **Restitution**

For Count 1, the Court should enter an order of restitution for $3,359,058.69 joint and severally liable with both John Finkle and Ken Pedroli. For Count 2, the defendant is solely liable for a restitution amount of $6,060,151.00. The defendant has not made any restitution payments prior to sentencing.

**Offense Conduct**

The defendant was employed by Company A, a supplier of electronic components based in Waukegan, Illinois. He was employed by Company A and operated its accounting and billing systems. The defendant participated in a scheme to defraud Company A with Kenneth Pedroli and John Finkle. In this scheme, Pedroli paid a discounted price for components sold by Company A, and paid Finkle directly via check. Finkle in turn deposited Pedroli's check into his personal bank account and provided a portion of this kickback to Gold.

Specifically, Finkle secured orders from Pedroli for products sold by Company A. Finkle instructed Pedroli to place his orders and list prices at a fraction of Company A's published price. After Finkle submitted Pedroli's order to Company A at the discounted price, the products would be shipped from Company A to Pedroli. Company A generated an invoice billing Pedroli's company for the discounted purchase price of the products. Finkle instructed Pedroli to pay only a portion of the invoiced price and to make the payments directly to him (Finkle) in Connecticut. In each instance, Pedroli wrote a check for a portion of the invoiced price, made the check payable to Finkle, and mailed the check to Finkle in Connecticut. Finkle would negotiate Pedroli's check by depositing the money into his personal bank account. Gold manipulated the accounting records of Company A to make it appear that Pedroli had paid Company A for the products, for which he received payment from Finkle.

The initial investigation focused on Finkle's scheme to defraud Company A with both Gold and Pedroli. But a much bigger crime -- committed solely by Gold -- was uncovered during that investigation. The FBI learned that, over a period of six years, Gold stole money from the company via a variety of methods. By the time the FBI uncovered his scheme, Gold had taken over 6 million dollars.

Beginning in at least early 2012 and continuing until the end of 2018, the defendant used corporate funds to pay his personal credit card bills. He made false entries in the company's accounting system to conceal those fraudulent payments. The defendant made at least 100 fraudulent transfers to pay his credit card expenses over a six-year period of time and stole $6,060,151.00 from his employer by this scheme alone.

In order to misappropriate funds from Company A, the defendant made false and misleading journal entries in Company A's accounting records, and intentionally altered and falsified information concerning customers' payments to Company A. He made these false accounting entries in order to balance the books, so that he could avoid detection and continue misappropriating funds.

The defendant also made entries in the accounting records falsely understating the amount of money paid by certain customers to Company A, and misappropriated the additional funds that had been paid by those customers. He also generated false financial reports that understated the company's income from sales.

Further, he misappropriated corporate funds by transferring hundreds of thousands of dollars to his wife's company, when Company A did not owe any money to that organization.

The defendant used those funds to pay for personal expenses that included vacations, on-line gambling, cruises, home improvement costs, furniture, clothes, restaurants, college tuition, and car payments.   For example, according to the FBI the defendant spent over $44,000 on scuba diving trips to Mexico, the Philippines, and the Cayman Islands.   He spent $70,000 to buy new vehicles for his personal use.   Additional sums were expended on landscaping, international travel and home improvement projects.   After one vacation, he apparently had a sailfish stuffed and mounted for $1100.

Further, during the course of his crime, Gold maintained multiple residences, paying $8,219 per month for homes in Wisconsin and Ocala, Florida. This mortgage obligation alone exceeded his gross annual salary at the time.   PSR ¶ 81.

## Analysis of the § 3553(a) Factors

Section 3553(a) directs the district court to consider a number of factors in imposing a fair and just sentence.   Each criminal case is different and emphasizes different combinations of § 3553(a) factors.   In this matter, the government believes the most important § 3553(a) factors are the (1) the specific nature and circumstances of the offense, (2) promoting respect for the law; (3) just punishment and (4) general deterrence.

### The Nature and Circumstances of the Offense

The defendant committed two serious offenses. First, he was a key participant in a conspiracy to defraud the company by diverting the sales of its products. At its core, this offense is a breach of trust. While he did not conceive the scheme, it would not have succeeded but for the position of financial trust that the defendant held within the company. At sentencing, three representatives from the victimized company will describe how a crime of this magnitude impacted the company.

But the defendant's more significant criminal offense was solely a product of his own creation, and predated the conspiracy involving Finkle and Pedroli. For a period of about 6 years, the defendant systematically syphoned millions of dollars from his employer by a variety of methods. He covered his tracks by virtue of his access to the company's accounting system. And he was quite successful. As discussed below, theft from businesses by financial insiders is not uncommon. Most of those cases come to the attention of law enforcement after the company detects the crime and alerts law enforcement. Here, the defendant was so successful that the crime only came to light when the FBI was investigating the conspiracy involving product sales. When the FBI noticed other abnormalities in the financial records, it contacted the company and the defendant's second, much larger crime, was exposed.

### The Sentence Must Promote Respect for the Law, Provide Just Punishment and Offer General Deterrence

The sentence in this case must reflect the seriousness of the offense committed by the defendant and promote respect for the law. A sentence of incarceration would be just for a crime of this magnitude. The defendant was an

insider who manipulated the company's financial systems in order to line his pockets with millions of dollars.  And, he used the money to live a life of largess – multiple homes, vacations, art, jewelry, trophy fish, cruise ships, diving trips, and airline tickets.  *See* PSR ¶ 19.  And it is interesting that he attempts to mitigate his crime by making much of his contributions and largess with donations, even citing a reference to himself as "one of the most generous men [known]." Def's Brief at 9.  It is easy to be generous with someone else's money.

The duration of the scheme shows that his criminal conduct was not isolated, nor was it a one-time lapse of judgment.  It required continuity of criminal purpose for years and years.  The defendant purposefully engaged in his fraudulent conduct over almost six years without regard to the impact on his employer. Week after week, month after month, he took his employer's money and spent it on luxuries for himself and his family.  Then he hid his crime by manipulating the company's books.  During this extended period of time, he could have stopped at any time.  But he didn't.  He kept stealing money - - more vacations, more dive trips, more clothes, more contributions.

Additionally, the court should consider general deterrence.  This was a crime committed by an employee against his employer.  This is not an uncommon occurrence and is a theme found in many financial fraud cases brought in this district. A sentence of incarceration will serve to inform others who contemplate similar crimes – that is fraud by insiders employed in similar organizations – that such actions will result a felony conviction and a term of incarceration.

## Conclusion

After considering the Sentencing Guidelines and the other sentencing factors under 18 U.S.C. § 3553(a), the Court should impose a term of incarceration within the applicable Guideline range and order the defendant to pay restitution.

        Respectfully submitted,

        JOHN H. DURHAM
        UNITED STATES ATTORNEY

            /s

        RAY MILLER
        ASSISTANT UNITED STATES ATTORNEY
        FEDERAL BAR NO. CT 20451
        157 CHURCH STREET, 23RD FLOOR
        NEW HAVEN, CT 06510
        (203) 821-3700

## CERTIFICATE OF SERVICE

This is to certify that on September 16, 2020 a copy of the foregoing Memorandum was filed electronically.   Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s

Ray Miller
Assistant U.S. Attorney